# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **TERRA BROWN, et al.,** | ) | **CASE NO.  4:05 CV 2439** |
| | ) | |
| **PLAINTIFFS,** | ) | **JUDGE PETER C. ECONOMUS** |
| | ) | |
| **V.** | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| **CITY OF WARREN, et al.** | ) | **ORDER** |
| | ) | |
| **DEFENDANTS.** | ) | |

This matter is before the Court upon the Motion for Summary Judgment on the issue of Qualified Immunity filed on behalf of Defendants, City of Warren, Officer Hipple, and Officer Carney.  (Dkt. # 11).  Also before the Court are Plaintiffs', Terra Brown, Jeremy Roe, and Jasmine Roe, memorandum in opposition (Dkt. # 12), Defendants' reply (Dkt. # 14), and Plaintiffs' sur-reply (Dkt. # 16).

## I.    FACTUAL BACKGROUND

The following version of the facts are taken from Plaintiffs' Complaint (Dkt. # 1) unless otherwise noted.

***Jeremy Roe***

On October 19, 2004, Plaintiff Jeremy Roe ("Jeremy Roe"), a minor, and several of his siblings were walking on Mercer Street in Trumbull County, Warren, Ohio.  (Compl. ¶ 12).  At approximately 4:45 P.M., Officer Hipple ("Hipple") and Officer Carney ("Carney")

approached Jeremy Roe and arrested him for the alleged use of profanity.  (Compl. ¶ 13).

The Warren Police Department charged Jeremy Roe with "Disorderly Conduct" and

"Obstructing Official Business."  (Compl. ¶ 16).  On March 31, 2005, the Trumbull County

Juvenile Court dismissed all charges against Jeremy Roe.  (Compl. ¶ 18).

*Terra Brown*

Plaintiff Terra Brown ("Terra Brown") is the mother of Jeremy Roe.  On October 19,

2004, upon becoming aware of the arrest of her son, Terra Brown proceeded to the scene

of the arrest with her daughter, Plaintiff Jasmine Roe ("Jasmine Roe") and another minor

son.  (Compl. ¶ 19).  At the scene of the arrest, Terra Brown witnessed Jeremy Roe on his

knees before Hipple and Carney.  (Compl. ¶ 20).  The officers had their weapons drawn and

aimed at the head of her son.  (Compl. ¶ 20).  When she asked the officers the reason for her

son's arrest, she received verbally abusive and derogatory responses from the officers.

(Compl. ¶ 21).  After continuing to ask the officers the reason for Jeremy Roe's arrest, one

of the officers "lifted Terra Brown off her feet and slammed her to the ground face into a

muddy puddle of water with a foot or knee restraining her and placing her head in the

water."  (Compl. ¶ 22).  One of the officers pepper sprayed her during this incident.

(Compl. ¶ 24).

Hipple and Carney then placed Terra Brown under arrest and took her to the Warren

Police Department, where she was placed in a holding cell.  (Compl. ¶ 25, 26).  The Warren

City Prosecutor charged her with resisting arrest and assault.  (Compl. ¶ 27).  Terra Brown

secured the services of an attorney to defend herself against these charges.  (Compl. ¶ 28).

***Jasmine Roe***

Jasmine Roe is the sister of Jeremy Roe and daughter of Terra Brown.  On October 19, 2004, Jasmine Roe accompanied her mother to investigate the arrest of her brother.  (Compl. ¶ 30).  Jasmine Roe approached the officers in question and, believing her mother was in "imminent danger of serious physical harm," pleaded with the officers to release her mother.  (Compl. ¶ 31).  She was then "pepper sprayed and physically abused by the Warren Police" which resulted in "her being partially disrobed, arrested and charged" for resisting arrest and assault on a police officer.  (Compl. ¶ 32).

***Officers Hipple and Carney***

Defendants' version differs from the Plaintiffs' in many respects.  On October 19, 2004, Hipple and Carney, dressed in uniform, were on bike patrol in the downtown area.  (Dkt. 11, Def.'s Exh. A at 5).  While speaking with a Mercer Place resident, the officers heard "a male subject yelling, 'fuck the police.'" (Dkt. # 11, Def.'s Exh. B ¶ 4).  A black male was standing in the middle of the street at Mercer and Mercer Place.[1]  <u>Id</u>.  As the officers were walking way, they again heard the black male yell "fuck the police" and "you guys ain't shit."  <u>Id</u>.  The officers "mounted their bikes to speak to [Jeremy Roe]." (Dkt. # 11, Def.'s Exh. B ¶ 5).  They approached Jeremy Roe and asked him to give some form of identification, finding that he "exhibited aggressive behavior which was disorderly conduct."  <u>Id</u>.  Jeremy Roe refused to give any identification to the officers.  <u>Id</u>.  The officers

---

[1]   The black male was later identified by both Hipple and Carney as Plaintiff, Jeremy Roe. (Dkt. # 11, Def.'s Exh. A, B).

advised him that he was under arrest for disorderly conduct and obstructing justice.  Id.

The officers proceeded to take Jeremy Roe into custody for disorderly conduct.  (Dkt. # 11, Def.'s Exh. A at 6).  After radioing the station, the officers "observed a large group of subjects approaching [them] from the North with clearly hostile intent from the language and demeanor."  (Dkt. # 11, Def.'s Exh. A at 7).  Hipple testified that as the group approached, "[p]rofanities were being yelled" and a "large Rottweiler" that was unleashed accompanied the group.  (Dkt. # 11, Def.'s Exh. A at 8).  Hipple un-holstered his weapon in preparation to defend against the unleashed animal.  (Dkt. # 11, Def.'s Exh. A at 8).  A juvenile female got the Rottweiler under control allowing Hipple to re-holster his weapon.  Id.

While Carney stood with the juvenile in custody, Hipple approached the crowd and ordered them to stay back and not to interfere.  (Dkt. # 11, Def.'s Exh. A at 8).  As he was instructing the crowd to stay back,  Hipple came to understand that one of the females in the crowd was the mother of the juvenile in custody, Terra Brown.  (Dkt. # 11, Def.'s Exh. A at 9).  Seconds after the officer instructed the crowd not to interfere with the arrest, Terra Brown "became assaultive and started throwing punches at [Hipple]  and striking [him]." (Dkt. # 11, Def.'s Exh. A at 9).  At some point after, a struggle ensued.  A juvenile female later identified to be Jasmine Roe proceeded to approach Hipple from behind and jump on his back.  Id.  He then pepper sprayed the juvenile.  Id.

Hipple proceeded to take Terra Brown into custody by grabbing "hold of her arm and [taking] her feet from underneath her."  (Dkt. # 11, Def.'s Exh. A at 11).  By this time,

4

several officers had arrived at the scene and assisted Hipple and Carney in effecting an arrest.  (Dkt. # 11, Def.'s Exh. B at 9).  As a result of this encounter, four subjects, including plaintiffs, Terra Brown,  Jeremy Roe, and Jasmine Roe, were taken into custody by the officers.  (Dkt. # 11, Def.'s Exh. B at 9).

On October 17, 2005, Plaintiffs filed a Complaint pursuant to 42 U.S.C. §§ 1983 and 1988, alleging violations of Jeremy Roe's First and Fourth Amendment rights.[2]  The Complaint also alleges the Defendants violated Terra Brown's and Jasmine Roe's Fourth Amendment rights under the United States Constitution.  In Count I of the Complaint, Terra Brown and Jasmine Roe allege a claim of excessive force.  Count II is a claim of unlawful arrest by all plaintiffs.  Count III of the Complaint alleges a violation of Jeremy Roe's First Amendment rights.  Count IV alleges that Defendant, City of Warren ("City of Warren") maintains a municipal policy and/or custom of deliberate indifference to the rights of their citizens as well as an official policy and/or custom of failing to provide adequate training, supervision, and/or discipline of the Warren Police Officers in the performance of their duties.[3]  Count V alleges assault and battery against Hipple and Carney by all plaintiffs.  Count VI alleges false arrest by all plaintiffs.  Count VII alleges False Imprisonment by all

---

[2]    The Complaint names the City of Warren, Officer Hipple, Officer Carney, and John Doe Police Officers as defendants.  However, no service has been perfected against defendants John Doe Police Officers, nor have they been identified.  Therefore, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, John Doe Officers are **DISMISSED** as defendants.

[3]    Defendants, in their motion, also set forth their argument that the City of Warren is entitled to summary judgment on the issue of municipal liability.  However, as the purpose of the current briefing schedule was to resolve the issue of qualified immunity, the Court will not address Defendant's arguments regarding municipal liability.

plaintiffs.  Count VIII is a malicious prosecution claim filed on behalf of Jeremy and Jasmine Roe.  Count IX alleges intentional infliction of emotional distress by all plaintiffs.

Defendants filed their motion for summary judgment on the issue of qualified immunity on January 26, 2006.  (Dkt. # 11).  On February 24, 2006, Plaintiffs filed a memorandum in opposition.  (Dkt. # 12).  Defendants thereafter filed a reply to Plaintiffs' response.  (Dkt. # 14).  Plaintiffs then requested leave to file a sur-reply, which this Court granted.  (Dkt. #s 15, 16).

## II.    STANDARD OF REVIEW

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56 (c).  "Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering such a motion, the court must review all of the evidence in the record. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); accord Graham-Humphreys v. Memphis Brooks

Museum of Art, Inc., 209 F.3d 552, 556-57 n.7 (6th Cir. 2000).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

"A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56 (c)).  The movant meets this burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Clayton v. Meijer, Inc., 281 F.3d 605, 609 (6th Cir. 2002) (quoting Celotex, 477 U.S. at 324-25).  The non-movant then "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

"The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Anderson, 477 U.S. at 250).  "A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250.

**III.    LAW**

7

**Qualified Immunity**

Section 1983 provides a cause of action against any person, who, under color of state law, deprives an individual of any right, privilege, or immunity secured by the Constitution and federal law.[4]  When officials are sued in their individual capacities pursuant to section 1983, they may be protected from liability for damages if their alleged wrongful conduct was committed while they performed a function protected by qualified immunity.  See Cagle v. Gilley, 957 F.2d 1347, 1348 (6th Cir.1992).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  The privilege is an "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id. Qualified immunity questions must be resolved at the earliest possible stage in litigation.  See Saucier v. Katz, 533 U.S. 194 (2001).

Government officials are generally entitled to qualified immunity when performing discretionary functions as long as the conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1981).  In order to assert a violation of a "clearly established"

---

[4]        42 U.S.C. § 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

right and defeat a qualified immunity defense, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).  In other words, "in the light of pre-existing law the unlawfulness must be apparent." Id.  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Consequently, the Court typically utilizes a two-step test in determining whether qualified immunity applies: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." Estate of Carter v. City of Detroit, 408 F.3d 305, 310-11 (6th Cir. 2005)(citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  On occasion, the United States Court of Appeals for the Sixth Circuit has employed a third step in its qualified immunity analysis.  This step requires the Court to ask "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." Feathers v. Aey, 319 F.3d 843, 848 (6th Cir. 2003); see also Barnes v. Wright, 449 F.3d 709, 715(6th Cir. 2006); Sample v. Bailey, 409 F.3d 689, 695 (6th Cir. 2005); Champion v. Outlook Nashville, Inc., 380 F.3d 893, 901 (6th Cir. 2004).[5]

---

[5]        However, "if the case at issue 'is one of the many cases where, if the right is clearly established, the conduct at issue would also be objectively unreasonable,' then this court has 'collapse[d] the second and third prongs' in an effort to 'avoid duplicative analysis.'" Swiecicki v. Delgado, 463 F.3d 489, 498 (6th Cir.2006)(quoting Caudill v. Hollan, 431 F.3d 900, 911 n.10 (6th Cir.2005)).

Individual claims of immunity must be analyzed on a fact-specific, case-by-case basis to determine whether the constitutional rights were so clearly established when the alleged misconduct was committed that any official in the defendant's position would understand that what they were doing violates those rights.  See Anderson, 483 U.S. 635, 640 (1987).

It is the province of the jury, not the court, to decide any factual disputes.  However, the court ultimately decides the question of whether "any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct."  Adams v. Metiva, 31 F.3d 375, 387 (1994).  While the defendant bears the burden of pleading the defense of qualified immunity, the ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity. Miller v. Administrative Office of Courts, 448 F.3d 887, 894 (6th Cir. 2006) (citing Silberstein v. City of Dayton, 440 F.3d 306, 311 (6th Cir. 2006)).

## IV.   ANALYSIS

The section 1983 claims in the case *sub judice* arise from the following constitutional rights: (1) the individual officers' alleged use of excessive force in violation of the plaintiffs' Fourth Amendment rights, as secured by the Fourteenth Amendment, (2) unlawful arrest in violation of plaintiffs' Fourth Amendment rights, (3) and Defendants alleged use of criminal sanctions to "curtail public criticism" in violation of Jeremy Roe's First Amendment rights.

### A.     COUNT I:  Excessive Force: *Terra Brown and Jasmine Roe*

The first step in any qualified immunity analysis is to determine whether the facts,

10

viewed in the light most favorable to plaintiffs, show that a constitutional violation could be found.  See Feathers, 319 F.3d at 848 (6th Cir.2003).  The Sixth Circuit has held that individuals have a right under the Fourth Amendment to be free of excessive force when police make an arrest or seizure.  See Lyons v. City of Xenia, 417 F.3d 565, 575 (6th Cir.2005) (citing Graham v. Connor, 490 U.S. 386, 394-95 (1989)).

In determining whether a Fourth Amendment violation occurred in this context, the Court must evaluate the objective reasonableness of the officer's conduct in light of the facts and circumstances facing the officer.  See Lyons, 417 F.3d at 575.  "In making this evaluation, courts look at '(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight."  Id.  As the Supreme Court stated in Graham:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation.

490 U.S. at 396-97.

It is undisputed that Terra Brown was arrested and charged with assault on a police officer and resisting arrest.  (Dkt. # 12, Exh. A-1, Arrest Report).  It is further undisputed that Jasmine Roe was arrested for allegedly assaulting a police officer and resisting arrest.[6]

---

[6]     Plaintiffs argue that "[t]here are significant factual disputes as to whether any crime was committed" by Terra Brown or her daughter Jasmine Roe, noting that "the Grand Jury

11

(Dkt. # 12, Exh. A-1, Arrest Report).

In the instant matter, Defendants allege that Terra Brown "punched and fought with the officers" and that Jasmine Roe "jumped" on Carney's back. (Dkt. # 11, Exh. B, Carney Aff.). Terra Brown avers that she did not assault Hipple and "was only attempting to check on her son's safety" when she was "thrown to the ground her [sic] head in a 'puddle of muddy water' not being able to breathe or move." (Dkt. # 12, Exh. C, Terra Brown Aff.). An eyewitness to the incident, Toshia Prescott, states that Jasmine Roe only became involved with the officers "in the defense of her mother [Terra Brown] who she thought was in danger." (Dkt. # 12, Exh. B, Prescott Aff.).

Defendants contend that "[t]hough the complaint alleges the use of pepper spray and has claims of [Jasmine Roe] being 'physically abused' there is nothing concerning force that rises to the level of a Fourth Amendment deprivation." (Dkt. # 11). As to Terra Brown, Defendants argue that "[b]eing placed on the ground and even being pepper sprayed are forms of force that are considered minimal in the grand scope of what a police officer is authorized to use under certain circumstances." (Dkt. # 11). Plaintiffs further allege, however, that "there was no hostile crowd activity" nor did Terra Brown or Jasmine Roe attempt to flee from arrest. (Dkt. # 11, Exh. B, Prescott Aff., Exh. C, Brown Aff.).

---

refused to indict" Terra Brown and that "all charges against [Jasmine Roe] were dismissed in the Trumbull County Court Juvenile Division." (Dkt. # 12, Exh. D). However, for the purpose of this Court's analysis, it is undisputed that both were "seized" under the Fourth Amendment when these events took place. See Graham, 490 U.S. at 395; see also Brower v. County of Inyo, 489 U.S. 593 (1989)(a Fourth Amendment seizure occurs when there is a governmental termination of freedom of movement through means intentionally applied).

Therefore, viewing the facts in a light most favorable to Plaintiffs, this Court concludes that a genuine issue of material fact exists as to whether the officers' actions violated Terra Brown and Jasmine Roe's Fourth Amendment right to be free from excessive force during an arrest.  See Solomon v. Auburn Hills Police Dept., 389 F.3d 167, 173 (6th Cir.2004).  This does not end our analysis, however.

After establishing a potential violation of Terra Brown and Jasmine Roe's constitutional rights, the second step in the qualified immunity analysis is to determine whether that right was clearly established.  See Feathers, 319 F.3d at 848.  "The contours of the right must be sufficiently  clear that a reasonable official would understand that what he is doing violates that right."  Sample, 409 F.3d at 698 (quoting Anderson, 483 U.S. at 640).  "In inquiring whether a constitutional right is clearly established, we must look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits."  Id. (quoting Walton v. City of South Field, 995 F.2d 1331, 1336(6th Cir.1993)).

The Court finds that the Plaintiffs' constitutional right to be free from excessive force was clearly established at the time of his arrest.  The Supreme Court has held that the right to be free from excessive force is a clearly established right under the Fourth Amendment which can give rise to a claim pursuant to 42 U.S.C. § 1983.  See Tennessee v. Garner, 471 U.S. 1 (1985).  Likewise, the Sixth Circuit has consistently followed this holding.  See Neague v. Cynkar, 258 F.3d 504, 507 ("the right to be free from excessive force is a clearly established Fourth Amendment right"); Adams, 31 F.3d at 386-87 (the right "to be free from

13

the use of excessive force under the Fourth Amendment . . . [is] clearly established.")(internal citations omitted); Dickerson v. McClellan, 101 F.3d 115, 1162-63(6th Cir.1996).

Finally, in completing the qualified immunity analysis, the Court must determine whether the Plaintiffs have offered sufficient evidence to indicate that what the officers allegedly did was objectively unreasonable in light of the clearly established constitutional right. See Feathers, 319 F.3d at 848. In the instant matter, the Court finds that Plaintiffs have produced sufficient evidence to overcome summary judgment. Further, because of the contested facts surrounding Terra Brown and Jasmine Roe's arrests, a question exists as to whether the officers actions were objectively unreasonable. See Dickerson, 101 F.3d at 1158 ("Summary judgment is not appropriate if there is a genuine factual dispute relating to whether [defendant] committed acts that allegedly violated clearly established rights.").

Accordingly, the Court finds that the conflicting accounts of the events surrounding Terra Brown and Jasmine Roe's arrest create a genuine issue of material fact as to what occurred on that date. Therefore, summary judgment is an inappropriate method for the resolution of Plaintiffs' excessive force claims. Bass v. Robinson, 167 F.3d 1041, 1051 (6th Cir.1999) ("Defendants are not entitled to qualified immunity on this claim because a question of fact exists as to whether Defendants used excessive force and thus violated rights that were clearly established at the time"). As a result, Defendants' motion for summary judgment must be denied with respect to Plaintiffs' claims in Count One of the Complaint.

14

**B.      COUNT II:  Unlawful Arrest:** *Terra Brown, Jasmine Roe, Jeremy Roe*

Plaintiffs contend that the "transportation and detention of [all plaintiffs] without probable cause constituted a seizure within the meaning of the Fourth Amendment and deprived plaintiffs of their right of liberty." (Dkt. # 1, Compl. ¶ 48).  Defendants argue that the officers possessed probable cause to arrest each plaintiff.

An arrest, imprisonment, and prosecution based on probable cause does not violate the Fourth Amendment's prohibition against unreasonable searches and seizures.  See Michigan v. DeFillippo, 443 U.S. 31, 36 (1979)(citations omitted).  A police officer has probable cause if there is a "fair probability" that the individual to be arrested has either committed or intends to commit a crime.  See Northrop v. Trippett, 265 F.3d 372, 379 (6th Cir.2001)(citing United States v. Sokolow, 490 U.S. 1, 7 (1989)).

"Whether there is probable cause for an arrest depends on whether there are sufficient 'facts and circumstances within the officer's knowledge' to warrant a prudent officer to believe that the suspect had committed or was about to commit an offense." Kaylor v. Rankin, 356 F. Supp.2d 839, 846 (N.D.OH 2005)(citing Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)).  The officer's actions are measured by what a reasonable officer would have done under the same circumstances.  Id.  "If a reasonable officer under the same circumstances would have believed that the arrest was lawful, then the arresting officer is entitled to qualified immunity."  Id.

*Jasmine Roe and Terra Brown*

As previously noted, Defendants assert that the officers had probable cause to arrest

all plaintiffs.  Jasmine Roe "allowed her Rottweiler to approach the officers in a threatening manner" resulting in the officers drawing their weapons.  (Dkt. # 11).  Furthermore, Defendants allege that Terra Brown "began to hit the officers," thus justifying her subsequent arrest for assault.  (Dkt. # 11).

Citing Ohio Revised Code § 951.02, § 951.11, and §§ 955.28(A) and (B)(4), Defendants argue that the officers had probable cause to arrest Jasmine Roe for allowing "her Rottweiler to approach the officers in a threatening manner" which forced the officers to "draw their weapons" in order to confront a "dangerous animal."  (Dkt. # 11).  Plaintiffs argue that "in reality it [sic] was [Jasmine Roe's] younger sibling who had responsibility for the dog."  (Dkt. # 12).  Plaintiffs contend that Jasmine Roe merely approached the officers, pleading with them to release her mother.  (Compl. ¶ 31).  She was then "pepper sprayed and physically abused" resulting in "her being partially disrobed, arrested and charged" for resisting arrest and assault on a police officer.  (Compl. ¶ 32).

Arguing that Terra Brown "began to hit the officers," Defendants believe that probable cause existed for the officers to arrest her for assault on a police officer.  (Dkt. # 11).  Plaintiffs present a different set of facts surrounding her arrest.  While witnessing her son's arrest, Plaintiffs contend that Terra Brown received verbally abusive and derogatory responses from the officers and that the officers "lifted Terra Brown off her feet and slammed her to the ground face into a muddy puddle of water with a foot or knee restraining her and placing her head in the water."  (Compl. ¶¶ 21, 22).

Whether a reasonable officer under the same circumstances would have believed that

16

Jasmine Roe's and Terra Brown's arrests were lawful depends upon whose version of the facts is accepted.  Therefore, viewing the facts in a light most favorable to Plaintiffs, the Court finds that a genuine issue of material fact exists as to whether probable cause existed for Hipple and Carney to arrest Jasmine Roe and Terra Brown.  The Court's analysis of this issue continues with the events surrounding Jeremy Roe's arrest.

### *Jeremy Roe*

Defendants contend that probable cause existed to arrest Jeremy Roe because he was obstructing official business and refused to provide identification to the officers.  Hipple and Carney aver that their "police work was interrupted by a youngster shouting profanities" and that Jeremy Roe was "exhibiting unruly and aggressive behavior."  (Dkt. # 11).  While speaking with a Mercer Place resident during bike patrol duties, the officers heard "a male subject yelling, 'fuck the police.'" (Dkt. # 11, Def.'s Exh. B ¶ 4).  The officers "mounted their bikes to speak to [Jeremy Roe]."  (Dkt. # 11, Def.'s Exh. B ¶ 5).  Finding that he "exhibited aggressive behavior which was disorderly conduct," the officers approached Jeremy Roe and asked him to give some form of identification.  Id.  Jeremy Roe refused to give any identification to the officers.  Id.  The officers advised him that he was under arrest

for disorderly conduct[7] and obstructing official business.[8]  <u>Id</u>.

Defendants argue that "the government can suppress some speech as verbal conduct" and that "where the plaintiff Jeremy Roe refused to provide identification" and where "the officer's request for identification was met with a torrent of profanities, the officer is authorized under Ohio law to make an arrest." (Dkt. # 11).[9]  However, "[a]bsent some other basis for interfering with [Jeremy Roe's] freedom of movement, his refusal to produce identification is not sufficient for a finding of probable cause."  <u>Kaylor</u>, 356 F.Supp2d at 847, n.4 (citing <u>Florida v. Bostick</u>, 501 U.S. 429, 437 (1991)(The Supreme Court has "consistently held that a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure,")); <u>see</u> <u>also</u> <u>Florida v.</u>

---

[7]    Ohio Revised Code Section 2917.11, entitled Disorderly Conduct, provides, in relevant part, that "No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following: (2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person; (3) Insulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response."

[8]    Though the record does not indicate the specific statute under which the plaintiff was arrested, pursuant to the Ohio Revised Code Section 2921.31, the elements of obstructing official business are: (1) No person, without privilege to do so; (2) with purpose to prevent, obstruct or delay the performance by a public official of any authorized act within his official capacity; (3) shall do an act which hampers or impedes a public official in the performance of his lawful duties.

[9]    Defendants cite Ohio Revised Code Section 2935.26, which states:
(A)    Notwithstanding any other provision of the Revised Code, when a law enforcement officer is otherwise authorized to arrest a person for the commission of a minor misdemeanor, the officer shall not arrest the person, but shall issue a citation, unless one of the following applies:

(2)    The offender cannot or will not offer satisfactory evidence of his identity.  <u>See</u> e.g.  <u>State of Ohio v. Trammel</u> 1999 WL 228844 2nd Dist. Ohio App. 1999.

18

Royer, 460 U.S. 491, 498 (1983) (A person approached by a police officer "need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way."). Here, there is no evidence that Jeremy Roe took any affirmative steps to interfere with the officers' bike patrol duties. To the contrary, the officers, on their own volition, broke off their conversation with the Mercer Place resident to pursue Jeremy Roe solely because of the profanities he was shouting.

Furthermore, "the First Amendment gives considerable latitude to citizens to express their views about the police and their activities." Kaylor, 356 F.Supp.2d at 847. Defendants aver that Jeremy Roe emitted a "torrent of profanities" directed at the officers. Though "fighting words" or "words which by their very utterance inflict injury or tend to incite an immediate breach of the peace" are not afforded constitutional protection, generally something more than profanity is required. Chaplinsky v. New Hampshire, 315 U.S. 568, 571-572 (1942). The Court finds Jeremy Roe's comments to the officers prior to his arrest to be protected speech under the First Amendment. Though disrespectful, his right to engage in such speech criticizing the officers did not rise to the level of "fighting words," and thus is afforded full constitutional protection.

Accordingly, the Court finds that Hipple and Carney did not possess the requisite probable cause to arrest Jeremy Roe.

Again, our inquiry does not end here. As to the second prong of the qualified immunity analysis, the Court finds that the right not to be arrested absent probable cause was clearly established at the time of Plaintiffs' arrests. See Dietrich v. Burrows, 167 F.3d

19

1007, 1012 (6th Cir.1999)("the law [is] clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual."). Furthermore, as to Jeremy Roe, "a reasonable officer would have understood that he could not arrest a citizen merely on the basis of verbal abuse and insult." Kaylor, 356 F.Supp.2d at 849 (citing Greene, 310 F.2d at 897).

Therefore, the Court finds that individual officers, Hipple and Carney, are not entitled to qualified immunity with respect to Claim II of the Complaint.

### C.    COUNT III:  First Amendment: *Jeremy Roe*

In Count III of their Complaint, Plaintiffs assert that the Defendants used "criminal sanctions to curtail public criticism" of the officers, and that such conduct violated Jeremy Roe's First Amendment rights.  (Dkt. # 1, Compl. ¶¶ 51-54). Generally, "[t]here can be no doubt that the freedom to express disagreement with state action, without fear of reprisal based on the expression, is unequivocally among the protections provided by the First Amendment." Barnes, 449 F.3d at 717 (quoting McCurdy v. Montgomery County, 240 F.3d 512, 520 (6th Cir.2001)).  "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principle characteristics by which we distinguish a free nation from a police state." City of Houston v. Hill, 482 U.S. 451, 462-63 (1987).

Furthermore, the Sixth Circuit has found "that adverse state action motivated at least in part as a response to the exercise of the plaintiff's constitutional rights presents an

actionable claim of retaliation." <u>Barnes</u>, 449 F.3d at 718 (citations omitted). "The law is well established that '[a]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.'" <u>Id</u>. (citations omitted).

As previously noted, the Court affords First Amendment protection to Jeremy Roe's comments to the officers. Applying the forgoing logic of the Sixth Circuit, the officers should have known that an arrest taken, even in part, as retaliation for constitutionally protected speech "would be impermissible unless it could be shown that the officer would have made the arrest even in the absence of any retaliatory motive." <u>Greene</u>, 310 F.3d at 897. This inquiry, however, forces the Court to assume the existence of probable cause for Jeremy Roe's arrest. As the Court has found that probable cause did not exist to arrest Jeremy Roe, qualified immunity is inappropriate as to this claim as well.

## V. CONCLUSION

For the foregoing reasons, the Court hereby orders that Defendants' Motion for Summary Judgment on the Issue of Qualified Immunity (Dkt. # 11) is **DENIED**. The parties shall appear before this Court for a **status conference** to be held on **Wednesday, January 31, 2007 at 1:30 p.m.**

      **IT IS SO ORDERED.**

                              **/s/ Peter C. Economus –January 22, 2007**
                              **PETER C. ECONOMUS**
                              **UNITED STATES DISTRICT JUDGE**